SPORTSMEN'S WILDLIFE DEFENSE FUND, a non-profit corporation; Western Slope Environmental Resource Council, a non-profit citizens group; Theresa Hamilton, an individual; Richard Saxton, an individual; and David Huerkamp, an individual, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; Bruce Babbitt, in his official capacity as Secretary of the Department of the Interior; United States Fish and Wildlife Service; Mollie Beattie, in her official capacity as Director of the United States Fish and Wildlife Service; John Mumma, in his official capacity as Director of the Colorado Division of Wildlife; Laurie Mathews, in her official capacity as Director of the Colorado Division of Parks and Outdoor Recreation; Ari Zavaras, in his official capacity as Director of the Colorado Department of Corrections; and Roy Romer, in his official capacity as the Governor of the State of Colorado, Defendants.

No. 96–B–1637.

United States District Court, D. Colorado.

March 24, 1999.

Colin C. Deihl, Faegre & Benson LLP, Denver, CO, Dawn McKnight, Earthlaw, Denver, CO, for Plaintiffs.

Maurice G. Knaizer, Attorney General's Office, John A. Lizza, First Assistant Attorney General, Timothy J. Monahan, Steven O. Sims, Assistant Attorney Generals, Denver, CO, Robert D. Clark, United States Attorney's Office, Denver, CO, Thomas R. Graf, U.S. Department of the Interior, Lakewood, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This action was brought originally to enjoin prospectively the state defendants from any further construction of a prison within the boundaries of the West Rifle Creek State Wildlife Area (Wildlife Area) or the Rifle Gap State Park (State Park). The complaint originally concerned claims for violations under 42 U.S.C. § 1983 of the Pittman–Robertson Wildlife Restoration Act (P–R Act); 16 U.S.C. § 669 *et seq.*, the Land and Water Conservation Fund Act (LWCF Act); 16 U.S.C. § 460*l et seq.*, and the National Environmental Protection Act (NEPA); 42 U.S.C. § 4321 *et seq.* In 1996, plaintiffs, Sportsmen's Wildlife Defense Fund (SWDF), Western Slope Environmental Resource Council (WSERC), Theresa Hamilton (Hamilton), Richard Saxton (Saxton), and David Huerkamp (Huerkamp) (collectively, plaintiffs) moved, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction against state defendants John Mumma (Mumma), in his official capacity as Director of the Colorado Division of Wildlife (DOW), Laurie Math-

ews (Mathews), in her official capacity as Director of the Colorado Division of Parks and Outdoor Recreation (DOP), Ari Zavaras, in his official capacity as Director of the Colorado Department of Corrections (DOC), and Roy Romer (the Governor), in his official capacity as the Governor of the State of Colorado (State)(collectively, state defendants). After the hearing, I denied the motion for preliminary injunction, denied the state defendants' motion to dismiss claim one (§ 1983 under the P–R Act), and granted their motion to dismiss claim two (§ 1983 under the LWCF Act) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. I denied the motion to dismiss based on lack of subject matter jurisdiction and lack of standing. *See Sportsmen's Wildlife Defense Fund v. United States Dept. of the Interior,* 949 F.Supp. 1510 (D.Colo.1996). Now pending are cross-summary judgment motions filed by plaintiffs, state defendants, and the United States Department of Interior, Bruce Babbitt, the United States Fish and Wildlife Service, and Mollie Beattie (collectively, federal defendants) on the following remaining claims: 1) claim one for violation of the P–R Act against all state defendants; 2) claim three for mandamus against the federal defendants based on violation of the LWCF Act; 3) claim four for mandamus for violations of the P–R Act against defendants USFWS and Director Beattie; and 4) claim five for violation of NEPA against the federal defendants.

## I.

### SUMMARY JUDGMENT STANDARD

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed. R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual

disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997).

## II.

### BACKGROUND

This action was filed by plaintiffs to stop construction of an expansion of the DOC prison facility located near Rifle, Colorado (Rifle prison). The initial DOC Rifle facility, built in the mid 1960's, was known as the Rifle honor camp and consisted of a temporary or mobile facility which housed a dozen inmates. The honor camp capacity increased to 18 inmates in 1973, and to 60 inmates in 1975. During this time, the inmates continued to be housed in mobile trailers. In the late 1970's, the DOC constructed a permanent facility at Rifle with a capacity of 100 inmates. In 1983, an additional living unit was added raising the inmate population to 120. The last living unit was added in 1984 bringing the current inmate population to 150.

## III.

### A. *The property at issue*

Unless noted, the following facts are undisputed. On September 25, 1967, the Colorado Department of Game, Fish and Parks entered into a 25–year agreement with the U.S. Bureau of Reclamation for the management for recreation purposes of the Rifle Gap Reservoir and certain federal lands and facilities associated with the Reservoir located in Garfield County, Colorado. On May 1, 1968, the Colorado Department of Game, Fish and Parks purchased 936.7 acres of land located in Garfield County, Colorado, together with all ditch and water rights, from Charles and Viola Clark for $112,000. This 936.7 acre parcel (the "Clark property") adjoins, and is located to the northwest of, the Reservoir property in the lower drainages of Middle and West Rifle Creeks. Half of the original purchase price for the Clark property was paid from the Colorado Department of Game, Fish and Parks Game Cash Fund. The other half of the original purchase price for the Clark property was paid from the Colorado Department of Game, Fish and Parks Cash Fund.

In 1972, the Colorado General Assembly terminated the Colorado Game, Fish and Parks Department and created two successor state agencies within the Colorado Department of Natural Resources, the Division of Wildlife (DOW) and the Division of Parks and Outdoor Recreation (DOP). On July 1, 1972, the DOP acceded to the Parks Cash Fund and the DOW acceded to the Game Cash Fund. At that time, the DOP also acceded to the 1967 agreement with the U.S. Bureau of Reclamation for the management of the Reservoir properties which continue to be managed for recreational purposes by the DOP.

On June 13, 1975, the DOW and the DOP entered into a cooperative agreement that granted the DOW the right to manage for wildlife enhancement and utilization purposes the western portion of the Clark property containing approximately 490 acres. The DOP continued to manage the remaining easterly portion.

The DOP and the DOC entered into an April 4, 1980 memorandum of understanding and agreement and lease of state property under which the DOP leased approximately 24 acres of the Clark property within the easterly portion to the DOC. On December 12, 1986, the DOP quit claimed all its right, title and interest in these 24 acres including some ditch and water rights to the DOC in exchange for the DOC's interest in approximately 4,000 acres of real property, including ditch and water rights, located near Pueblo, Colorado. From 1982 through 1987, the DOW, as part of a statewide comprehensive option application for federal funding, including P–R funding, applied for and received reimbursement from the federal govern-

ment. From 1994 to date, the DOW, as part of a statewide application for P–R funding, applied for and is receiving reimbursement for wildlife management activities on the western portion of the Clark property. The parties dispute whether P–R funding was used on the eastern portion of the Clark property where the Rifle prison is located.

In November 1996, the DOW had the Clark property appraised for the purposes of partitioning the property between it and the DOP. In accordance with a March 1, 1996 Memorandum of Understanding (1996 MOU) and based on the appraisal, in 1997 the DOW and the DOP partitioned their interest in the Clark property. The partition accounted for expenditures made on the property by the respective divisions since the property's acquisition in 1968. As a result, the DOW received undivided fee title to the western portion and the DOP took undivided fee title to the eastern portion. The Rifle Correctional Center is located entirely within the eastern portion of the Clark property, now owned by the DOP and managed as part of Rifle Gap State Park. The western portion of the Clark property, owned by the DOW, is managed as the West Rifle Creek State Wildlife Area. The United States Fish and Wildlife Service reviewed and approved the partitioning of the Clark property between the DOW and the DOP. Towry Affidavit, ¶ 12.

Plaintiffs filed suit in July 1996 claiming, *inter alia,* that the state defendants have violated the P–R Act by diverting state hunting and fishing license fees revenues to a purpose other than the administration of the DOW. Seeking an immediate cessation of the Rifle prison expansion, in October 1996, plaintiffs filed a motion for preliminary injunction which I denied after an evidentiary hearing. *See Sportsmen's Wildlife Defense Fund v. United States Dept. of the Interior,* 949 F.Supp. 1510 (D.Colo.1996)(*Rifle I*).

B. *Pittman–Robertson Act, 16 U.S.C. § 669 et seq.*

Pursuant to the P–R Act and its implementing regulations, federal funds are made available to the states for wildlife restoration projects. To participate in this federal funding program, states must "assent" to the provisions of the P–R Act or otherwise agree that all state hunting and fishing license fee revenues will be used only for the administration of the state fish and wildlife agency. Colorado, through the DOW, has assented to the P–R Act. See section 33–1–117, C.R.S. Colorado is presently participating in the P–R Act federal funding program.

The P–R Act provides in part:

[t]he Secretary of the Interior is authorized to cooperate with the States, through their respective State fish and game departments, in wildlife restoration projects ...; but no money apportioned under this chapter to any State shall be expended ... until [the State] shall have assented to the provision (sic) of this chapter and shall have passed laws ... which shall include a prohibition against the diversion of license fees paid by hunters for any other purpose than the administration of said State fish and game department.... The Secretary of the Interior and the State fish and game department of each State accepting the benefits of this chapter, shall agree upon the wildlife-restoration projects to be aided in such State under the terms of this chapter....

16 U.S.C. § 669. The P–R Act provides federal matching grants to states for wildlife restoration projects funded jointly by a state and the USFWS. To qualify for federal matching funds, commonly referred to as "federal aid monies" or "P–R monies," a recipient state must agree to use its state hunting license fees solely for wildlife purposes. *Id.* The PR Act further requires the state to enact legislation making it unlawful for the state to use its own license fee monies for any purpose other than wildlife. *Id.*

P–R Act monies can be used only for wildlife restoration projects defined to mean:

> [t]he selection, restoration, rehabilitation, and improvement of areas of land or water adaptable as feeding, resting, or breeding places for wildlife, including acquisition by purchase, condemnation, lease, or gift of such areas or estates or interests therein as are suitable or capable of being made suitable therefore, and the construction thereon or therein of such works as may be necessary to make them available for such purposes.

16 U.S.C. § 669a.

The P–R Act further restricts how state license fee revenues can be spent. The term "license revenues" is defined to include income from the "sale, lease, rental, or other granting of rights of real or personal property acquired or produced with license fee revenues." 50 C.F.R. § 80.4(a)(2). A state, like Colorado, that has assented to the P–R Act's terms may use its license fee monies only for the administration of its fish and game department. *Sportsmen's Wildlife Defense Fund v. Romer*, 29 F.Supp.2d 1199, 1203 (D.Colo.1998)(*Delta I*); *See* § 669; 50 C.F.R. § 80.4. Thus, the P–R Act places mandatory restrictions on a recipient state's use of its own state monies and state wildlife areas for non-wildlife purposes such as highways, prisons, or schools. *See Delta I*, 29 F.Supp.2d at 1203.

Pursuant to 16 U.S.C. § 669i, the Secretary of the Interior has promulgated rules and regulations for carrying out the P–R Act's provisions. *See generally* 50 C.F.R. part 80. The regulations restrict a state's use of real property acquired with state license fee monies. As discussed above, the regulations secure this restriction by defining the term "license fee revenue" broadly to include income from the sale, lease, or other granting of rights in real property acquired with license revenues. *See* § 80.4(a)(2).

If a state spends license fee monies on a non-approved purpose or uses land acquired with license fee monies for a non-approved purpose, the state is said to have "diverted" those license fee monies pursuant to § 80.4. The regulations contain explicit, separate remedies for "diversion."

"A diversion of state license fee revenues occurs when any portion of license revenues is used for any purpose other than the administration of the State fish and wildlife agency." 50 CFR § 80.4(c). If a diversion occurs, the state becomes ineligible to participate under the P–R Act from the date the diversion is declared by the Director until:

> 1. adequate legislative prohibitions are in place to prevent diversion of license revenue, and;
>
> 2. all license revenues or assets acquired with license revenues are restored, or an amount equal to license revenue diverted or current market value of assets diverted (whichever is greater) is returned and properly available for use for the administration of the State fish and wildlife agency.

*See* 50 C.F.R. § 80.4(d)(2).

## IV.

### CROSS-MOTIONS FOR SUMMARY JUDGMENT

A. *Claim one for violations of the P–R Act*

Plaintiffs seek summary judgment on claim one for violation of the P–R Act against the state defendants. For the following reasons, I deny plaintiffs' motion and grant the state defendants' motion.

In *Rifle I*, I found and concluded that plaintiffs failed to meet their burden to show that P–R funds were used by the State of Colorado to acquire the Clark property. *Id.* at 1528. I also found and concluded that plaintiffs did not met their burden to show that P–R monies were used to develop or maintain the eastern portion of the Clark property. At this summary judgment stage, plaintiffs submit a memorandum written by Donald Crane,

as evidence that construction and development activities were paid for with P–R funds on the eastern portion of the Clark property. The Crane memo and arguments presented by plaintiffs do not alter my original finding and conclusion.

### 1. *August 3, 1996 Crane Memo*

■ In support of their summary judgment motion plaintiffs submit a three page document dated August 3, 1996 titled "WEST RIFLE CREEK" written by Don Crane, the DOW district wildlife manager for the North Rifle District, including the Clark property. Crane Memo. On the second page, Crane lists improvements made to the eastern portion of the Clark property where the Rifle prison is located. Several entries state that the source of the funds for improvements was "Fed. Aid." *See* Crane Memo, p. 2.

At the preliminary injunction hearing, Mr. Crane testified that he planted lure crops in a field located around the Rifle prison and cleaned two ditches. *See Rifle I*, 949 F.Supp. at 1528–29. He also testified that it was his "understanding," "assumption," and "impression" that federal aid monies were used to fund the projects in question. *See id; see also* Crane Transcript, pp. 43–46. During his deposition, the following exchange occurred:

> Q: You indicated that it was your understanding that Federal aid funds had been used to conduct this reseeding. Is that just your understanding, or do you actually know that Federal funds were used?
>
> A: That's just my understanding.
>
> Q: So you don't know if they were used at all?
>
> A: No, I do not.

Crane Depo. p. 106.

Pursuant to the parties' stipulations, Robert Towry, the DOW's liaison for P–R Act issues, testified that P–R Act funds were used for development and maintenance activities for the western portion of the Clark property where the Wildlife Area is located. Significantly, however, Towry did not testify that P–R funds were used for development and maintenance activities on the eastern portion of the Clark property where the Rifle prison is located. *Id.* at 1529.

Pursuant to Fed. Rule Evid. 602, a witness may not testify to a matter unless evidence is introduced to show the witness has personal knowledge of the matter. As demonstrated by Mr. Crane's testimony at the preliminary injunction hearing and during his deposition, the statements made by him in the August 3, 1996 memo are not based on Mr. Crane's personal knowledge regarding the source of funding for the wildlife management activities on the eastern portion of the Clark property. Therefore, I conclude that Mr. Crane's testimony and the August 3, 1996 memo are incompetent evidence under Rule 602.

Under these circumstances, plaintiffs have failed to meet their burden to show there is a genuine factual dispute whether the eastern portion of the Clark property was acquired, constructed, or maintained with federal monies. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### 2. *Diversion*

■ It is undisputed that if a state uses land acquired with license fee monies for a non-approved purposed, the state is in "diversion." *See* § 80.4; *Delta I,* 29 F.Supp.2d at 1204. There is no dispute here that construction and operation of the prison on land acquired in part with license fee monies was an improper use of these revenues. Consequently, as a matter of law, a diversion of state license fee monies occurred. *See Delta I,* 29 F.Supp.2d at 1207. I turn then to the actions take by the state defendants to remedy or "cure" this diversion.

### a. *Sufficiency of cure*

■ The state defendants have a right to cure any diversion. *Id.* at 1208. Plaintiffs contend that the State's cure is inadequate. I disagree.

To cure the diversion, the DOW and the DOP partitioned their holdings in the Clark property. The DOW transferred its 50% undivided interest in the eastern portion of the Clark property to the DOP in exchange for DOP's 50% undivided interest in the western portion. The partition accounted for expenditures made on the property by the respective divisions since the property's acquisition in 1968. As a result, the portion of the Clark property where the Rifle prison is located is now owned entirely by the DOP. Under these circumstances, I hold that the partitioning of the Clark property between Wildlife and Parks has cured the diversion. The DOP, now the owner of the property occupied by the Rifle prison, does not spend or otherwise control the expenditure of state license fee revenue, and, therefore is not subject to the P–R Act.

The DOW no longer holds any interest in the property occupied by the Rifle prison. The property interest received by the DOW in the partition (the remaining 50% interest in the western portion of the Clark property) is presently available for use in the administration of the DOW and is used and managed by the DOW as the West Rifle Gap Wildlife Area. Under these circumstances, the diversion of state license fee revenues has been cured.

Relying on the testimony of Ted Washington (Washington), Colorado's federal aid coordinator, plaintiffs state that the partition results in an additional diversion. I disagree.

At his deposition, Mr Washington testified that when a parcel of property is acquired in part with license fee monies and in part with general fund monies, the entire parcel must be used for wildlife purposes. Plaintiffs' Ex. I. However, this is an unsupported legal interpretation of federal regulations. Moreover, by agreeing that the partition resolved any possible diversion, by inference, the federal defendants interpret "assets acquired with license revenue" to mean the 50% undivided interest in the Clark property held by the

DOW and not the Clark property in its entirety.

█ An agency's interpretation of its own regulations is entitled to great deference and should be rejected only if it is unreasonable, plainly erroneous or inconsistent with the regulation's plain meaning. *Lewis v. Babbitt,* 998 F.2d 880 (10th Cir. 1993). In addition, the intent of the P–R Act is to insure that state fish and wildlife agencies spend state license fee revenues on the administration of the state fish and wildlife agencies if the state participates in P–R funding.

Plaintiffs have made no showing that the USFWS, by approving the partition, acted unreasonably, incorrectly, or inconsistently with the meaning of the regulation. Also, the intent of the P–R Act is satisfied by the partitioning of the Clark property. The DOW's original investment of state license fee revenues continues to be used for wildlife management in the form of the DOW's 100% interest in the western portion of the Clark property.

Plaintiffs also argue, as they did in *Delta I,* that no cure is possible because § 33–1–117, C.R.S., enacted by Colorado to comply with the P–R Act's requirements, is not in compliance with 50 C.F.R. § 80.4's provision that "adequate legislative prohibitions [must be] in place to prevent diversion of license revenue" before a state declared to be in diversion is eligible to resume participation in the P–R Act. 50 C.F.R. § 80.4(d)(1). Thus, according to plaintiffs, any § 80.4 cure cannot be effective until Colorado enacts a statute containing a specific prohibition of diversion of license revenues.

In *Delta I,* 29 F.Supp.2d 1199 (D.Colo. 1998), I concluded that the plain language of statute requires the DOW to act in compliance with the P–R Act and the rules and regulations promulgated by the secretary of the interior thereunder. The provision thus incorporates by reference all statutory and regulatory requirements of the P–R Act. To require Colorado to in-

clude all possible violations of the P–R Act and its supporting rules and regulations would encourage "legislative loopholes." *Id.* at 1209. This reasoning applies here as well. Having concluded that there is no competent evidence that P–R funds were used in the acquisition, maintenance, or construction of the eastern portion of the Clark property and that the state defendants have cured the diversion of state license fee revenues, I grant the state defendants' summary judgment motion on claim one and deny plaintiffs' cross-motion.

**B.** *Claim three for mandamus against the federal defendants*

■ At the preliminary injunction phase of this litigation, the state defendants sought "dismissal of claim two for violation of 42 U.S.C. § 1983 predicated upon the [Land and Water Conservation Fund Act]." *Rifle I,* 949 F.Supp. at 1519. In *Rifle I,* I concluded that the LWCF Act does not create enforceable rights, privileges, or immunities within the meaning of 42 U.S.C.1983. *Id.* at 1520–21. The focus of my analysis in *Rifle I* was the language of the LWCF rather than the identity of the party against whom the LWCF action was brought. Thus, the conclusion that no private right of action exists for alleged violations of the LWCF applies equally here. Therefore, I grant the federal defendants' summary judgment motion on claim three and deny plaintiffs' cross-motion.

**C.** *Claim four for mandamus for violation of the P–R Act against defendants USFWS and Director Beattie*

■ Plaintiffs claim that under the P–R Act and the federal regulations, the USFWS and Director Beattie had an "absolute, non-discretionary statutory duty to determine whether a diversion of state license fees has occurred and to take certain enforcement actions where a diversion of fees has occurred." Second Amended Complaint, ¶ 62.

In *Delta I,* plaintiffs brought a similar claim upon which I granted the federal defendants' summary judgment motion.

*Delta I,* 29 F.Supp. at 1212. I noted that § 80.4(d)(2), the statute relied upon by plaintiffs in both cases, contains no guidance concerning when or if a diversion must be declared. Thus, § 80.4 may be interpreted to grant the federal defendants broad discretion whether to declare a diversion.

In this case, the record shows that the USFWS reviewed and approved the state defendants' proposed partition between the DOW and the DOP to remedy any diversion on the Clark property. Towry Affidavit, ¶ 12. Upon consideration of all relevant factors, including the federal defendants' articulated reasons for its decision not to declare a diversion, I cannot state, as a matter of law, that the exercise of discretion by the USFWS here was arbitrary, capricious, an abuse of discretion, or contrary to law. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Therefore, I will grant summary judgment on claim four in favor of the USFWS and Director Beattie and deny plaintiffs' cross-motion.

**D.** *Claim five against all federal defendants for violation of the NEPA*

Having concluded that there is no private right of action under the LWCF and that the diversion created by the construction and operation of the Rifle prison on the Clark property was cured by the partition of the Clark property between the DOW and the DOP, there is no basis for claim five for violation of the NEPA. Therefore, I grant the federal defendants' summary judgment motion on claim five and deny plaintiffs' cross-motion.

Accordingly, IT IS ORDERED that:

1. the state defendants' summary judgment motion is GRANTED as to claim one;

2. the federal defendants' summary judgment motion is GRANTED as to claim three and claim five;

3. the summary judgment motion filed by defendants USFWS and Director Beattie as to claim four is GRANTED;

4. the plaintiffs' cross-motion on claims one, three, four, and five is DENIED;

5. this action is DISMISSED;

6. judgment shall enter in accordance with this Order; and

7. all defendants are awarded costs upon submission of a bill of costs within 10 days from entry of this Order.